IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA LESCHKIES, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Case No. 06 C 1289 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| NEW ROGERS PONTIAC INC., ) | |
| ) | |
| Defendant . ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

Patricia Leschkies ("Leschkies") brings suit against New Rogers Pontiac Inc., d/b/a Rogers Auto Group ("New Rogers") for wrongful termination on the basis of her gender and her age in violation of Title VII and the Age Discrimination in Employment Act. New Rogers moves for summary judgment on both counts. Additionally, both parties have moved to strike portions of the other party's Local Rule 56.1 statements and New Rogers has moved to deem facts admitted. After granting in part an denying in part both parties' motions to strike and deem facts admitted, genuine issues of material fact remain regarding Leschkies' job performance and the proffered reasons for her termination such that New Rogers' Motion for Summary Judgment is denied.

Facts

Leschkies, a 64-year-old woman, worked as the service manager and later service director at New Rogers for eighteen years until she was terminated on October 28, 2005. New Rogers' Amended Response to Plaintiff's Local Rule 56.1(b)(3)(c) Statement of Additional Facts (hereafter "Def. 56.1 Resp.") at ¶ 1; Plaintiff's Local Rule 56.1(b)(3) Response to Defendant's Local Rule 56.1(a)(3) Statement (hereafter "Pltf. 56.1 Resp.") at ¶ 3-5. New Rogers is an automobile dealership

selling five different brands: Pontiac, Buick, GMC Truck, Chevrolet, and Hyundai. Pltf. 56.1 Resp. at ¶ 2.

Monty Scher ("Scher"), the president of New Rogers, hired Leschkies in 1988 as a service manager. When the service director retired, New Rogers promoted Leschkies to service director where she received yearly increases in salary. As the service director, Leschkies' duties included managing the operations of the service department; hiring and monitoring the service department employees; maintaining reports on the department and its performance; working with other departments; and understanding and supervising the warranty process. Pltf. 56.1 Resp. at ¶ 10. The parties dispute the number of staff members she supervised and whether Leschkies supervised the collection of customer repair orders as well as warranty repairs.

The only information in the record concerns Leschkies' performance and the performance of her department during 2004 and 2005.[1] In 2004, New Rogers acquired an existing Chevrolet franchise and hoped to maintain the overall customer base from the acquired franchise despite the increased volume. Pltf. 56.1 Resp. at ¶ 28. New Rogers claims that the service department under Leschkies had numerous problems in 2004 and 2005 that fall into four rough categories: too much overtime for porters, unsatisfactory "Customer Service Index" scores, rising unpaid repair orders, and decreased profits. First, Leschkies supervised scheduling for all the employees in her department. Pltf. 56.1 Resp. at ¶ 16. For porters in her department, Leschkies staggered the eight-hour shifts of each porter to start between 5 a.m. and 2 p.m. Since the dealership sometimes stayed open as late as 1 a.m., the dealership authorized overtime for porters in those circumstances. Pltf.

---

[1] It is undisputed that Leschkies announced her intention to resign from her position as service director in 1998 or 1999 because she had found more lucrative employment, but Scher convinced her to remain with New Rogers. Def. 56.1 Resp. at ¶ 2.

2

56.1 Resp. at ¶¶ 19-20. Scher authorized all overtime pay at New Rogers, but the amount of overtime for all employees in all departments concerned him because overtime expenses added to overhead expenses for the dealership as a whole. Def. 56.1 Resp. at ¶ 35. He met with Leschkies and the other managers to discuss his concerns about overtime for porters. Pltf. 56.1 Resp. at ¶ 20; Pltf. Dep. at 116-19. Leschkies admitted that she knew that the dealership sometimes used porters late into the evening on occasions, but she did not change the schedules of any of the porters to start later in the day because the evening services were not needed regularly. Pltf. Dep. at 125-6. She admitted, however, that the dealership stayed open late one to two days per week. Pltf. Dep. at 124-25. She also did not track the overtime of porters in her department, although she signed off on their timecards. Pltf. 56.1 Resp. at ¶ 23.

Second, Leschkies was responsible for monitoring performance in the service department. Pltf. 56.1 Resp. at ¶ 10. The service department focused on customer relations and customer maintenance. Pltf. 56.1 Resp. at ¶ 25, 26. The "Customer Service Index," or CSI, is a tool used by the automobile industry to gauge customer satisfaction. Pltf. 56.1 Resp. at ¶ 29, 30. In 2004, New Rogers joined the General Motors "Standards for Excellence" program, or SFE. CSIs were a large component of the SFE program. Pltf. 56.1 Resp. at ¶ 31, 34. Dealerships paid to join the SFE program, which offered incentives to dealerships to increase their performance and satisfaction of their customers for Buick, Pontiac, and GMC. *Id.* In the SFE program, dealerships received bonuses from General Motors if they met quarterly goals set by General Motors in two areas: CSI scores and number of cars sold. If the combined CSI scores from both the sales and the service department exceeded the target set by General Motors, the dealership received a bonus of up to $220,000 in a year. Pltf. 56.1 Resp. at ¶ 33.

Scher testified that he expected each department's CSI to be half of the target goal set by the General Motors. Pltf. 56.1 Resp. at ¶ 36. Leschkies testified that it was not her understanding that the sales and service department CSI scores should each contribute half of the SFE target, especially in light of the seasonal nature of repair orders. Pltf. 56.1 Resp. at ¶ 36. Mario Tarchala, one of the heads of the sales department at New Rogers, testified that CSI figures from the sales department regularly exceeded those of the service department. Tarchala Dep., Def. Ex. H, at 18. Leschkies testified that CSI figures for service exceeded CSI figures for sales. Pltf. Dep. at 249.

According to a document from General Motors, in 2004 and 2005 the service department performed at a lower CSI rate than the sales department in most quarters, although it sometimes met the goal of one-half of the dealership's CSI target and sometimes exceeded the CSI score for the sales department. *See* Def. Ex. E, Scher Aff. Of the possible $220,000 bonus from General Motors, New Rogers earned only $60,000 for the year. *Id.* Scher testified that the service department's failure to meet CSI goals was one of the reasons New Rogers terminated Leschkies. But Leschkies produced letters sent to her directly from General Motors congratulating her on her commendable performance in CSIs for the service industry in 2004 and ranking her first in the region for performance on the service CSI. *See* Pltf. Ex. 2. She received gifts and a trip from General Motors rewarding her for her performance. The CSI statistics in 2005 were not appreciably different from those in 2004.[2]

Third, Leschkies supervised the collection of warranty payments for warranty-covered repairs. Pltf. 56.1 Resp. at ¶ 50. The parties dispute whether Leschkies also supervised the collection of money from customers; Leschkies testified that the office manager, Linda Shepcik

---

[2] These documents are the subject of New Rogers' Motion to Strike, discussed below.

("Shepcik") supervised the cashiers who collected money from customers. Pltf. Dep. at 35. At the end of each month, Leschkies admitted that she "closed out" the warranty-covered repairs regardless of whether the balance had been collected. According to Leschkies, this method had been the standard practice at the dealership since before she arrived and appropriately accounted for work performed each month. Pltf. 56.1 Resp. at ¶ 51; Def. 56.1 Resp. at ¶ 18. According to Edward Drzewiecki ("Drzewiecki"), the New Rogers' comptroller, Leschkies' practice was improper and resulted in a rising balance of accounts receivable. Scher and Shepcik met with Leschkies in 2005 to discuss the problem of the outstanding warranty repair orders. Def. 56.1 Resp. at ¶ 19.

Finally, the net income figures for the service department dropped from approximately $200,000 in 2004 to approximately $41,000 in 2005 according to Drzewiecki's calculations. See Def. Ex. L. The gross figures for the same period increased between 2004 and 2005, from approximately $2.06 million to $2.19 million. Def. Ex. L-1. Drzewiecki testified that the service department's expenses went up due to building additions, utility increases, and some tax increases. Def. Ex. K at 17-21. Leschkies testified that she met with Scher and Drzewiecki regarding the profit figures and asked for expense information, specifically as to how the expense figures had been calculated to cause such a drastic drop in the net figures while the gross figures increased, but New Rogers did not provide her with the information. Def. 56.1 Resp. at ¶ 7.

After Scher terminated Leschkies, he hired Frank DeKruiff as her replacement at the recommendation of Shepcik. At the time of his hire, DeKruiff was 45 years of age. He had prior experience as a service director at other dealerships. DeKruiff Aff., Def. Ex. O. New Rogers paid DeKruiff less than it paid Leschkies, shifting more of his pay to a commission basis. Scher Dep. at 38.

Standard of Review

To succeed on its motion for summary judgment, New Rogers must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that New Rogers is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering this motion, the Court must construe all facts in the light most favorable to Leschkies and must view all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

Parties' Motions to Strike and Admit

The parties have filed two motions to strike and one motion to deem facts admitted. Leschkies moves this Court to strike New Rogers' "56.1 Statement of Additional Facts in Support of its Motion for Summary Judgment" filed concurrent with its reply brief. Leschkies' Motion to Strike is granted. Local Rule 56.1 provides for the movant to file a statement of undisputed facts

with the opening brief containing 80 short numbered paragraphs. *See* Local Rule 56.1(a). The non-movant may file an answer to that statement of undisputed facts, along with 40 additional statement of facts, with its response brief. *See* Local Rule 56.1(b)(3). The movant may then respond to the additional statement of facts with its reply brief. *See* Local Rule 56.1(a). The movant is not permitted to file an additional statement of facts along with the reply brief; not only is this filing not covered by the rule, but results in the movant exceeding the 80 statements of fact allotted to it and permits the non-movant no opportunity to respond. The Court has not reviewed this additional statement of facts and strikes the answer to those additional facts that Leschkies filed in the alternative to her Motion to Strike.

New Rogers filed two motions: a Motion to Strike portions of Leschkies' 56.1 Statement of Additional Facts, and a Motion to Deem Admitted certain portions of New Rogers' own statement of facts in light of Leschkies' responses thereto. Both motions are granted in part and denied in part. The Court deems each fact to be admitted where Leschkies has not opposed the fact directly with a specific cite to the record. But several of the paragraphs that New Rogers moves be deemed admitted have been opposed directly with appropriate citation. Leschkies uses the unnecessary and therefore confusing phrase "in further answer" in many of her responses, but the remainder of the sentence and the citation attached to the sentence constitute a denial of the 56.1 statement to which it responds.

To the extent that New Rogers pleaded a 56.1 fact as more than a short numbered paragraph, Leschkies properly denied the fact despite the length of her response. For example, paragraph 15 of New Rogers' Statement of Undisputed Facts is a laundry list of the reasons that Leschkies was terminated. If Leschkies were to admit this fact she would lose her case, but there is no concise way

to deny such a lengthy fact in light of Leschkies' theory of the case - that New Rogers' proffered evidence of her poor performance is pretextual. In these cases, New Rogers' Motion to Deem Admitted is denied.

Finally, New Rogers moves this Court to strike letters from General Motors that Leschkies testified she received and to strike the statements of undisputed additional facts that rely upon the letters. New Rogers moves to strike the letters for lack of foundation, as inadmissible hearsay, and as outside the scope of discovery. New Rogers' Motion to Strike is granted in part and denied in part. The motion is denied with respect to the argument concerning discovery violations, as Leschkies produced evidence to the Court that these documents were both addressed in her answers to interrogatories and discussed at depositions.

New Rogers next argues that the documents are inadmissible for lack of foundation and for hearsay. "Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002). It is not immediately clear from the record that these documents are, in fact, hearsay documents or that no exception to the hearsay rule may be employed. General Motors authored the documents as part of the SFE program, to which New Rogers belonged and as such the documents are clearly relevant to a determination of whether New Rogers' proffered reason for discharging Leschkies – that the service department was not operating successfully–is pretextual. It appears possible that Leschkies would be able to establish the foundantion of these document by obtaining the testimony of a GM representative who would be able to explain how the letters were awarded and how they were maintained within the ordinary course of business of GM. Neither party discussed or briefed this issue, but on the basis of the record before the Court these documents are not necessarily

8

inadmissible as hearsay and the Plaintiff could be able to establish their admissibility through a proper witness.

As for the authenticity of the letters, New Rogers has committed the same error that it claims Leschkies has committed. New Rogers attempts to authenticate through Scher another document from the same SFE program, the CSI scores for 2005. To lay the foundation, Scher testified that the report "was prepared in the ordinary course of business by GM." Def. Ex. E. If New Rogers believes these documents are inadmissible as unauthenticated and hearsay because they were authored by General Motors, then Scher has no more authority to testify to the veracity of a document authored by General Motors than does Leschkies, and neither the CSI scores nor the letters may be admitted without proper foundation. Personal knowledge of receipt is different than personal knowledge of the authorship of the document. *See* Fed. R. Evid. 803(6). Neither Scher's nor Leschkies' testimony creates the business record exception on behalf of General Motors:

> Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.

*Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Leschkies and Scher can only testify that they received the documents; they cannot testify that the documents' contents mean what they purport to mean. Therefore, both parties will need to establish the authenticity of these documents as business records of General Motors, and both parties will need to attach an affidavit of a person qualified to introduce the records.

Discussion

To establish an age discrimination claim under the ADEA or a gender discrimination claim under Title VII, a plaintiff must show that she would not have been terminated "but for" her employer's intentional age discrimination. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061-62 (7th Cir. 2003). The two types of discrimination are analyzed under the same framework. *See id.* at 1061 n.4. Leschkies may proceed under either the direct or indirect method of proving that New Rogers took an adverse employment action against her because of her gender or her age. Under the direct method, Leschkies must show, using either direct or circumstantial evidence, that the motivation behind her termination was discriminatory. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). But because the direct method of proving discrimination "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus," this option is not available to many aggrieved employees. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003).

Leschkies describes two isolated incidents, neither of which constitute direct evidence of discrimination. First, Leschkies testified that Scher approached her at her birthday party two years prior to her termination, patted her on the rear, and said, "You're getting old, baby." A statement demonstrating discriminatory animus is relevant if it relates to the decision at issue and was made around the same time as the decision. *See Hunt v. City of Markham,* 219 F.3d 649, 652 (7th Cir. 2000). Scher's statement substantially predates any of the evidence discussed in this case and bears no relation to the decision-making process. Second, Leschkies testified that the office manager, Shefcik complained about the level of pay among older workers at the dealership. Shefcik denied that she made such a statement. Def. Ex. J at 32. In order to constitute direct evidence, a statement

must come from a person who exercised decision-making authority. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1057-58 (7th Cir. 2006) ("Stray remarks made by non-decisionmakers are not evidence that the decision had a discriminatory motive.") Both parties admit that Scher, not Shefcik, made the decision to terminate Leschkies.

Leschkies also proceeds under the indirect, burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, Leschkies must first present a prima facie case of discriminatory discharge by showing that: (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably than she was treated. *See Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006) (*citing McDonnell Douglass*). This *prima facie* showing creates an initial presumption that the employer unlawfully discriminated against its employee. *See St. Mary Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993) ("To establish a presumption is to say that a finding of the predicate fact (here, the prima facie case) produces a required conclusion in the absence of explanation (here, the finding of unlawful discrimination).") (internal quotation marks omitted). If Leschkies can demonstrate such a prima facie case, the burden shifts to New Rogers to produce a legitimate, non-discriminatory reason for Bottoms's termination. *Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006); *see also St. Mary Honor Center*, 509 U.S. at 509 (observing that the employer's burden is one of production only and not persuasion). If New Rogers can produce such a reason, Leschkies may then present evidence that the articulated reason is, in fact, a pretext. *Paul*, 465 F.3d at 794. In this context, a

pretext is "a lie, specifically a phony reason for some action." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

Leschkies satisfies three of the four prongs in the *McDonnell Douglas* test for both age and gender discrimination. She was 62-year-old female at the time she suffered an adverse employment action, was replaced by a male in his forties, and two similarly-situated younger males running the sales department were not terminated. The central disputed facts concern Leschkies' performance. New Rogers uses the same evidence to argue both that Leschkies did not meet her employer's legitimate expectations, an element of her prima facie case, and that New Rogers had a legitimate non-discriminatory business reason for terminating her. Leschkies has provided evidence to show that she was both meeting her employer's legitimate expectations at the time of her termination and that the non-discriminatory reasons offered by New Rogers are pretextual.

Leschkies produces two kinds of evidence to show that she was meeting her employer's expectations: the General Motors letters congratulating her on her performance in the SFE, and her own testimony both that Scher did not issue any written warnings about her performance and told her that she performed well, and that the performance failures of which she is accused are outside the scope of her job description. The General Motors documents create a genuine issue of material fact as to whether her department's CSI scores failed to meet her employer's expectations. Her testimony creates a genuine issue of material fact as to whether she failed to meet expectations in other aspects of her job. Generally, the testimony of the plaintiff alone will not satisfy the prima facie burden that the employee met the employer's expectations. An employee cannot create a triable issue of fact in discrimination suit solely by disagreeing with the employer about whether she performed well. *See Adsumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998). But a plaintiff

12

may defeat summary judgment with her deposition if it is based on personal knowledge and otherwise admissible evidence. *See Paz v. Wauconda Healthcare and Rehabilitation Ctr., LLC*, 464 F.3d 659 (7th Cir. 2006) (citing cases).

Leschkies' testimony is not merely a series of unsubstantiated disagreements with Scher or blanket self-serving statements that she performed to expectations. Rather, Leschkies testified with detail and personal knowledge regarding different job duties from those described by Scher, different accounts of the performance reviews she received, and different accounts of the subject matter of meetings between department directors and Scher. She also described her attempts to obtain information about the basis for the deteriorating profit figures for her department, to which she received no response, and described her actions to correct those overtime and warranty problems that were discussed with her, after which she received no further feedback. If a jury believed Leschkies' testimony about her job duties and her interactions with Scher and other New Rogers personnel, a reasonable jury could find that she was meeting her employer's expectations at the time she was terminated.

This same disputed evidence also creates a genuine issue of material fact as to whether Scher's proffered non-discriminatory reasons for terminating Leschkies (the same performance problems as raised in the prima facie case) are a pretext for discrimination. In reviewing evidence of pretext, "[a] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 324 (7th Cir. 2003), *citing Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). Leschkies presents evidence sufficient to create a genuine issue of material fact as to whether the beliefs were honestly held and not merely poorly founded. Leschkies' evidence tending toward

13

an inference of pretext is twofold: first, her testimony amounts to a detailed rebuttal of "not my job;" if a jury believes Leschkies' testimony that the duties Scher claims Leschkies neglected were never Leschkies' duties in the first place, a reasonable jury could find that the proffered reasons lack legitimacy. The testimony of Leschkies and several other employees at New Rogers suggests that, at the very least, all employees suffered from confusion as to who performed what job; at worst, however, Scher's litany of performance problems were not the motivation for his decision to terminate Leschkies. Second, the testimony of Leschkies and other employees present at department meetings creates a genuine issue of fact as to whether the reasons given to Leschkies at the time she was terminated are the same as the reasons now offered following the commencement of suit, and little to no documentary evidence exists to support the later reasons. *See O'Neal v. City of Albany*, 293 F.3d 998 (7th Cir. 2003) ("[W]hen an employer gives one reason at the time of the adverse employment decision but later gives another which is unsupported by the documentary evidence, a jury could reasonably conclude that the new reason was a pretextual, after-the-fact justification.") Taken together with testimony that Leschkies asked for clarification and documentation as to the basis for the performance problems raised with her but and received none, and the evidence that at least one third-party felt her performance to be exemplary, these disputed reasons create a genuine issue of material fact that could lead a reasonable jury to conclude that Scher's reasons for termination were pretextual.

Conclusion

Because Leschkies has met her burden to present evidence of a genuine issue of material fact that she met her employer's expectations and that New Rogers' non-discriminatory reasons for its decision to terminate Leschkies is a pretext for age or gender discrimination, New Rogers' Motion

for Summary Judgment is denied. Leschkies' Motion to Strike is granted, and New Rogers' Motion to Strike and Motion to Deem Admitted are granted in part and denied in part consistent with this opinion.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 3, 2007